IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**RONDA M. MARTS,**

    **Plaintiff,**

v.                                                          Civil Action No. 2:05-cv-00672

**JO ANNE B. BARNHART,**
**Commissioner of Social**
**Security,**

    **Defendant.**

<u>**MEMORANDUM OPINION**</u>

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the court on Plaintiff's Brief in Support of the Complaint and Defendant's Brief in Support of Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Ronda M. Marts, (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB on April 30, 2002, alleging disability as of March 22, 2002, due to

neck pain, low back pain, headache, anxiety/panic attacks, ringing in her ears, left leg and left arm pain, carpal tunnel syndrome, and inflammation in her right heel. (Tr. at 51-52, 231-232, 75.) The claims were denied initially and upon reconsideration. (Tr. at 35-38, 40-42, 237-239, 243-245.) On April 10, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 43.) The hearing was held on September 2, 2003 before the Honorable Arthur Conover. (Tr. at 248-280.) By decision dated September 15, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-23.) The ALJ's decision became the final decision of the Commissioner on June 14, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 3-5.) On August 18, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential

evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2003). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2003). The Commissioner must show two things: (1) that

3

the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of cervical sprain; left temporomandibular joint syndrome; trauma bursitis, left shoulder; and low back strain. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant has a residual functional capacity for a range of sedentary work, reduced by nonexertional limitations. (Tr. at 20.) As a result, Claimant cannot return to her past relevant work. (Tr. at 20.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as a dispatcher, a telephone surveyor, and information clerk, which exist in significant numbers in the national economy. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 13-22.)

Scope of Review

The sole issue before this court is whether the final decision

of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 38 years old at the time of the administrative hearing. (Tr. at 250.) She has a high school equivalency diploma. (Tr. at 252.) In the past, she worked as a health care support specialist and as a cashier. (Tr. at 76.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ did not properly assess Claimant's credibility, because he erred in weighing the medical opinions of record, and because he posed an inadequate hypothetical question to the vocational expert. (Pl.'s Br. at 3-9.) The Commissioner responds that the ALJ's decision was proper and was supported by substantial evidence in all respects. (Def.'s Br. at 10-17.)

Claimant avers that the ALJ "belittled" her complaints of pain and physical limitations, and "call[ed] her a liar," because the ALJ deemed her only partially credible. (Pl.'s Br. at 3-4, tr. at 18.) She argues that the ALJ failed to properly apply the two-part test set forth in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). (Pl.'s Br. at 8-9.) For reasons below, the court disagrees.

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b)(2003); SSR 96-7p, 1996 WL 374186 (July 2, 1996); see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such

an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4)(2003). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side

>       effects of any medication you take or have taken to
> alleviate your pain or other symptoms;
>
>       (v) Treatment, other than medication, you receive or
> have received for relief of your pain or other symptoms;
>
>       (vi) Any measures you use or have used to relieve
> your pain or other symptoms (e.g., lying flat on your
> back, standing for 15 or 20 minutes every hour, sleeping
> on a board, etc.); and
>
>       (vii) Other factors concerning your functional
> limitations and restrictions due to pain or other
> symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2003).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p, 1996 WL 374186, at *2 ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record").  Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision.  The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In this case, the ALJ noted the Craig analysis in the body of his opinion, and, resolving doubts in the Claimant's favor, found that she satisfied the threshold inquiry of proving an impairment

that could reasonably be expected to cause the alleged symptoms. (Tr. at 16-17.)  He then determined, however, that Claimant's testimony as to her limitations and disabling pain were not supported by the objective findings or her treatment record. (Tr. at 18.)

In reaching this decision, the ALJ considered Claimant's description as to the location, duration, frequency and intensity of her pain and symptoms (tr. at 15, 18); her alleged limitations (tr. at 16-18); her treatment (tr. at 15); her measures of pain relief (tr. at 18); her medications and side effects therefrom (tr. at 18); precipitating and aggravating factors (tr. at 18), her activities of daily living (tr. at 17-18), and a third-party report of contact descriptive of Claimant's activities of daily living. (Tr. at 17.)  He then proceeded to consider whether these factors were consistent with the objective medical evidence of record and other evidence concerning the nature and severity of Claimant's impairments and limitations.  Based on inconsistencies uncovered in that comparison, he found Claimant only partially credible.  (Tr. at 18.)

First, the ALJ observed that x-rays of Claimant's spine were normal, and x-rays of her left knee revealed no fracture or dislocation of the knee or patella. (Tr. at 18, citing Exhibit 5F, tr. at 186.)  Treating physician Richard S. Trenbath, M.D., recorded that her straight leg raising test was positive

9

bilaterally for back pain. The ALJ observed that despite Claimant's complaints, Dr. Trenbath recorded that the ligaments in her left knee were intact. (Tr. at 19, citing Exhibit 3F, tr. at 143.) Dr. Trenbath did not restrict her from any activities, but rather, had repeatedly prescribed physical therapy for her. (Tr. at 143-149.)

The ALJ noted that a May 25, 2002 MRI of Claimant's lumbar spine showed degenerative dehydration of L3 and L4 and facet arthrosis at L3, L4 and L4/L5, with some mild lateral recess stenosis at L4/L5. However, there was no evidence of disc herniation or acute fracture. A May 3, 2003 MRI showed degenerative disc disease at L3-4 and L4-5 with a left L3-4 disc protrusion and/or small herniation. (Tr. at 172.) The ALJ also noted that treating chiropractor Sherwin Miller, B.A., B.S., M.S., D.C. reported Claimant's description of her pain as 4 out of 10 and that her pain had been decreasing, but she had an exacerbation of neck, mid back, and low back pain on March 31, 2003. (Tr. at 19, 225.) Dr. Miller noted that Claimant had increased her range of motion, strength and functioning, and experienced decreased pain. (Tr. at 19, citing Exhibits 4F, tr. at 172, and 9F, tr. at 225.)

So too the ALJ noted the findings of Joseph A. Snead, M.D., who examined Claimant in July, 2003 at the request of her counsel. (Tr. at 19, citing Exhibit 8F, tr. at 221-223.) Dr. Snead reported that Claimant's upper and lower extremity reflexes were intact and

that she had no calf muscle atrophy.  Straight leg raising in the sitting position was negative at full knee extension except for some mild back pain.  In the supine position, Claimant experienced back pain upon elevation of the left leg to 44 degrees and elevation of the right leg to 50 degrees.  There was mild patellofemoral crepitiation with pain in the left knee; however, ligaments were stable and there was no swelling or redness noted. (Tr. at 19, citing Exhibit 8F, tr. at 222.)

The ALJ also considered the limitations imposed by state agency medical sources.  He imposed restrictions that were consistent with these; in fact, he was even more conservative in calculating Claimant's functional capacity than these reviewers. (Tr. at 20, citing Exhibits 2F, tr. at 129-136, and 7F, tr. at 212-219.)

The court finds that the ALJ properly applied the credibility analysis set forth in Craig, and considered the requisite factors above.  The ALJ's pain and credibility findings were supported by substantial evidence and will not be disturbed.

Claimant then argues that the ALJ failed to properly apply 20 C.F.R. § 404.1527 (2003), which pertains to the weighing of medical opinions.  (Pl.'s Br. at 4, 8-9.)  He asserts that the ALJ failed to properly explain his rationale and that the record does not support his findings.  Id.

The regulations, however, require that the medical opinions be

11

considered with the rest of the relevant evidence in the file. 20 C.F.R. § 404.1527(b)(2003). In weighing medical opinions, such factors as the consistency of the records, the treatment or examining relationship of medical sources, the supportability of the medical opinions, and the specialization of the medical sources are all to be considered. Id. at 1527(d)(2003).

Claimant does not articulate exactly how the ALJ violated this provision. In other portions of her Brief, Claimant argues that the ALJ erred in adopting the restrictions imposed by reviewing physician Rafael Gomez, M.D., while declining to adopt the opinions of Dr. Snead. (Tr. at 4-6.)

However, the ALJ stated plainly that he did not find Dr. Snead's opinions to be supported by the objective findings or the degree of treatment Claimant received. (Tr. at 19.) The court notes that Dr. Snead did not quantify any limitations in such matters as how much Claimant could lift, how long she could stand, sit, walk, or engage in any other exertional or postural activities. (Tr. at 223.) Instead, he diagnosed her with sprains of her cervical and lumbar spine, bulging disc, sprained left shoulder and contused left kneecap. He opined that she could only bend over to 25 degrees and suffered a significantly stiff back with some leg numbness. From these facts, Dr. Snead concluded that Claimant was not fit to engage in *any substantial gainful employment activity*. (Tr. at 223.) Under the regulation above, the

ALJ was free to conclude that the extreme restrictions Dr. Snead imposed did not correlate with these minimal objective findings, and therefore lacked support.

The ALJ was also free to conclude that the level of limitation Dr. Snead imposed—---total disability---was not consistent with Claimant's minimal treatment history. As the ALJ noted, Claimant sought chiropractic treatment which resulted in increased range of motion, strength and functioning, and decreased pain; and that Claimant took only minimal medications such as Ibuprofen and Tylenol. (Tr. at 18-19, 80, 115.) She was not a candidate for surgery and there was no record of her seeking other avenues of pain relief after cessation of her chiropractic treatment, such as physical therapy, injections, or stronger pain medications, which would be more indicative of the severe pain she alleged.

The lack of supporting objective evidence and the inconsistency between Dr. Snead's opinions and Claimant's treatment history were both legally appropriate reasons for the ALJ to discount Dr. Snead's opinions. Indeed, as the ALJ cited, SSR 96-2p provides that "a case cannot be decided upon a medical opinion without some reasonable support for that opinion." The ALJ committed no error in disregarding Dr. Snead's limitations.

Meanwhile, contrary to Claimant's arguments, the ALJ appropriately relied upon the opinions of state agency reviewers Daniel MacCallum, M.D. and Rafael Gomez, M.D. (Tr. at 20, <u>citing</u>

13

Exhibits 2F and 7F, tr. at 129-136 and 212-219.)  These reviewers considered Claimant's pertinent medical history and quantified her exertional, postural, manipulative, and environmental restrictions accordingly.  Dr. MacCallum found that the severity or duration of Claimant's symptoms were disproportionate to that which would be expected based upon Claimant's medically determinable impairments. (Tr. at 134.)  Both reviewers limited Claimant to light work.  (Tr. at 134, 217.)  Even so, the ALJ restricted Claimant even further, finding that only a range of sedentary work was appropriate.  (Tr. at 20, see also tr. at 131, 133, 214, 216.)  Obviously, then, the ALJ considered the remainder of the record in arriving at a more restrictive functional capacity; and did not, for example, simply adopt the reviewers' opinions wholesale.  Substantial evidence supports his decision in this regard.

Finally, Claimant argues that the ALJ erred in posing an inadequate hypothetical to the VE.  (Pl.'s Br. at 6-7.)  The ALJ's question incorporated the restrictions imposed by Dr. Gomez. Claimant charges this as error.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular

14

claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51.  Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.  Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In this case, as Claimant states, the ALJ incorporated many of the restrictions Dr. Gomez imposed in his review.  Claimant does not argue that any of her impairments were omitted from the question; rather, she argues that Dr. Gomez' restrictions were not stringent enough.  For reasons above, the court finds that the ALJ's decision to adopt Dr. Gomez's opinions instead of Dr. Snead's opinions was a decision grounded in substantial evidence. Claimant's arguments concerning an inadequate hypothetical fail for the same reason her preceding argument failed.

Claimant concludes by arguing that if the ALJ had deemed her testimony as to her limitations fully credible, there would not be any jobs available to her, per the VE's testimony.  (Pl.'s Br. at 6.)  However, again, for reasons above, the ALJ properly analyzed Claimant's credibility.  His decision to withhold her unsupported

complaints from the hypothetical question was not error.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the relief requested in Plaintiff's Brief in Support of the Complaint is **DENIED**, the relief requested Defendant's Motion for Judgment on the Pleadings is **GRANTED**; the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to provide copies of this Order to all counsel of record.

**ENTER**: September 22, 2006

Mary E. Stanley
United States Magistrate Judge

16